COOPER, Appellee and Cross–Appellant, et al.

v.

METAL SALES MANUFACTURING CORPORATION,
Appellant and Cross–Appellee.

[Cite as *Cooper v. Metal Sales Mfg. Corp.* (1995), 104 Ohio App.3d 34.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 93–A–1849.

Decided May 15, 1995.

36

*Bobulsky & Grdina* and *Betty Grdina,* for appellee and cross-appellant.

*Kohrman, Jackson & Krantz, Alan M. Rauss* and *Joshua R. Cohen,* for appellant and cross-appellee.

CHRISTLEY, Presiding Judge.

This is an appeal and cross-appeal from several judgments entered by the Ashtabula County Court of Common Pleas in the lawsuit filed by appellee/cross-appellant William C. Cooper against his former employer, Metal Sales Manufacturing Corporation, appellant/cross-appellee.

In August 1989, appellant hired appellee as an interstate truck driver. At that time, appellee had been a truck driver for over twenty years, and was hired as an at-will employee at appellant's Jefferson, Ohio facility.[1] At the time of appellee's

---

1. Appellant's corporate headquarters are located in Louisville, Kentucky.

employment, he was one of approximately seven truck drivers working at appellant's Jefferson facility.

During the period of appellee's employment at the Jefferson facility, regulations promulgated by the United States Department of Transportation ("D.O.T.") and incorporated in the Ohio Administrative Code restricted the number of hours that a motor carrier could permit or require a driver of a commercial vehicle to drive within a given period. See Section 395.3(b), Title 49, C.F.R.; Ohio Adm.Code 4901:2–5–02(A). The regulations also prohibited the driver from exceeding these hourly limits.

Appellant's drivers carried with them a monthly log. This log contained a separate sheet for each day of the month, and the drivers would fill out and turn in a daily sheet indicating, among other things, the number of hours that they were on duty for that day.

On July 30, 1990, appellant was the subject of a D.O.T. audit. Among the violations uncovered was that appellee had exceeded the hourly limit that prohibited a driver from driving a commercial vehicle for more than seventy hours in any eight consecutive days. Appellant was cited for requiring or permitting a driver to exceed this limit.

Appellee was discharged by appellant three days after the D.O.T. audit. Appellant's employee separation report indicated that appellee's discharge was due to "excessive log hour violations as determined by D.O.T. audit."

After his discharge, appellee was treated for traumatically induced anxiety related to his job loss.

On June 27, 1991, appellee and his wife filed a complaint containing three distinct causes of action. The first cause asserted that appellee had been wrongfully discharged in violation of the public policy of the state of Ohio as embodied in Ohio Adm.Code 4901:2–5–02(A) and Section 395.3(b), Title 49, C.F.R. The second cause asserted a claim for loss of consortium by appellee's wife. The third cause asserted the tort claim of intentional infliction of emotional distress.

Prior to trial, appellant filed a motion for partial summary judgment concerning appellee's wrongful discharge claim. On July 24, 1992, the trial court granted appellant's motion, and the case proceeded to trial on appellee's claim for intentional infliction of emotional distress and his wife's claim for loss of consortium.

At trial, appellee presented evidence that appellant had always considered him to be a satisfactory employee, and that he had never been disciplined or warned for driving in excess of the maximum hours permitted by the D.O.T. regulations.

Appellee testified that, on more than one occasion, his immediate supervisor, Tim Wolf, had instructed him to set out on an interstate delivery despite having been informed by appellee that he did not have enough hours to complete the trip without exceeding the limit of seventy hours in eight days. Four other former drivers for appellant testified that they had repeatedly violated the logging-hour regulations, yet had never been disciplined or discharged.

Appellee testified that, in relation to a particular delivery to Cato, New York, Tim Wolf had suggested that if appellee were unwilling to make the deliveries due to his hours, appellant would find someone else to do it and that appellee would not be needed anymore.

Appellee presented his log sheets as evidence that appellant either knew or should have known that he was occasionally exceeding the maximum on-duty hours prescribed by the D.O.T. regulations. Similar evidence was submitted regarding the logged hours of other drivers at the Jefferson facility.

Driver logs were allegedly monitored by appellant in two ways. Each driver would submit his driving logs and payroll hours on a weekly basis to Tim Wolf at the Jefferson facility. Wolf, in turn, forwarded these records to the corporate headquarters in Louisville, Kentucky where Eric Fenstemaker, appellant's safety director, would review the logs.

During the period in question, appellant was in the process of centralizing and computerizing the data submitted by its drivers. Prior to appellee's discharge, Fenstemaker had never reprimanded a driver for being over hours. However, appellant's alleged policy was to first warn a driver who had been found to be violating the log hour limits.

Appellee presented evidence that as a result of the circumstances surrounding the discharge, he developed traumatically induced anxiety which was both severe and psychologically debilitating.

On March 30, 1993, the jury returned a verdict in favor of appellee, answering eight special interrogatories in appellee's favor concerning the elements of the cause of action. Compensatory damages were awarded in the amount of $100,000 on the intentional infliction claim, and punitive damages were awarded in the amount of $200,000. The jury awarded no damages for the loss of consortium claim filed by appellee's wife. The jury also found that attorney fees should be awarded to appellee.

Subsequently, appellee moved to confirm the amount of the punitive damages award. Appellee also moved for prejudgment interest. Appellant filed a motion for judgment notwithstanding the verdict and for a new trial.

On April 21, 1993, the trial court held a hearing on the issues of attorney fees, prejudgment interest, and punitive damages. On April 30, 1993, the trial court

issued a judgment on these issues. In this judgment, the court denied appellee's motion for prejudgment interest.

On the issue of punitive damages, the court noted that it had submitted this issue to the jury under the mistaken understanding that R.C. 2315.21(C)(2), concerning punitive damages, was an unconstitutional infringement upon appellee's right to a jury trial.

However, the court then concluded that the statute was not unconstitutional and, therefore, treated the jury's punitive damages verdict as advisory only. The court independently considered the evidence and arguments of counsel and found that the appropriate amount of punitive damages should be reduced to $50,000.

The court, having received evidence on the issue of attorney fees, awarded appellee such fees in the amount of $55,153.35.

On July 26, 1993, the court heard arguments on appellant's motions for judgment notwithstanding the verdict ("JNOV") and a new trial. On November 18, 1993, the court issued a judgment entry in which it denied appellant's motions.

Appellant timely filed its notice of appeal, advancing three assignments of error:

"1. The trial court erred in refusing to enter judgment notwithstanding the verdict in favor of the Defendant–Appellant, Metal Sales Mfg. Corp.

"2. Even if the trial court had grounds to deny judgment notwithstanding the verdict, it nevertheless erred in refusing to order a new trial.

"3. The trial court erred in awarding punitive damages and attorneys fees to the Plaintiff–Appellee, William C. Cooper."

Appellee advances the following three cross-assignments of error for this court's review:

"1. The trial court erred in granting Defendant's motion for partial summary judgment on the First Cause of Action for tortious wrongful discharge, where plaintiff's claim was based on a violation of the public policy of Ohio as expressed in the Ohio Administrative Code provisions governing motor carrier safety regulations.

"2. The trial court erred in denying Plaintiff's motion to confirm the jury verdict concerning punitive damages and in reducing the punitive damages award from $200,000 to $50,000.

"3. The trial court erred in denying Plaintiff's motion for prejudgment interest."

Under its first assignment of error, appellant maintains that the trial court erred in denying its motion for JNOV. Specifically, appellant contends that

appellee failed to prove each of the elements of a claim for intentional infliction of emotional distress. The primary argument raised by appellant in this motion was that the answer to specific Interrogatory No. 3 was inconsistent with the general verdict.

Appellant also asserted in this motion that a claim for intentional infliction of emotional harm cannot be predicated solely upon the act of discharging an at-will employee who, by definition, may be discharged for any cause and at any time whatsoever.

In ruling upon a motion for JNOV, a trial court must construe the evidence most strongly in favor of the nonmovant. If upon all of the evidence there is substantial evidence to support the nonmovant's position and upon which reasonable minds may differ, the motion must be denied. *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 532 N.E.2d 162.

Normally, an appellate court need only examine the transcript in order to establish if reliable and competent evidence was present in a sufficient amount to support the verdict. However, in the instant matter, there were also eight interrogatories submitted to the jury, one of which, No. 3, dealt directly with what evidence was relied upon by the jury to support its finding of an intentional infliction of emotional distress.

Appellant questioned the sufficiency of this interrogatory in the sense that it was insufficient as a matter of law to support a finding of intentional infliction of emotional distress. In essence its argument is that the jurors did not have a clear understanding of the distinction they were to make between the fact of appellee's discharge and the circumstances surrounding that discharge.

Interrogatory No. 3 requested that the jury list the intentional or reckless acts of appellant that it found to be extreme or outrageous. The jury returned a two-part answer:

"1) A lack of road-hour monitoring by supervisors at both the local and corporate levels.

"2) Singling out in firing of only one driver, when several were in violation of logging hour regulations."

Thus, this court in its review must look to see whether as a matter of law, the response to this disputed interrogatory was (1) supported by the record, (2) consistent with the general verdict, and (3) objected to in a timely fashion.

In addressing the third prong, we find that while appellants did object to the jury's response in its motion for judgment notwithstanding the verdict, it did not object earlier when the jury was still available to correct any inconsistency.

42

A failure to enter a timely objection at a time when the jury has not yet been discharged has been held to be a waiver to any inconsistent answer. *Haehnlein v. Henry* (1987), 41 Ohio App.3d 233, 535 N.E.2d 343; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411; *Greynolds v. Kurman* (1993), 91 Ohio App.3d 389, 632 N.E.2d 946.[2]

■ If such an objection is timely made, then the trial judge has an opportunity to correct an inconsistency by "(1) return[ing] the jury for further consideration of its answer; (2) enter[ing] judgment in accordance with the answer; or (3) order[ing] a new trial." *Haehnlein*, at syllabus. See, also, Civ.R. 49(B).

Because appellant waited until the jury was discharged, the best option, that of having the jury clarify its position, became unavailable to the judge. *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 627 N.E.2d 986.

Had the jury confirmed that it had, indeed, focused and relied on the two factors listed (the poor record keeping and the singling out of appellee for firing) *to the exclusion of the other evidence,* then it is entirely possible that we might have agreed with appellants that these two examples of the company's conduct do not rise to the level of the intentional infliction of emotional distress.

■ In order to establish the tort of intentional infliction of emotional distress, a plaintiff must prove that the defendant's conduct was extreme and outrageous, that the defendant either intended to cause or knew or should have known that his conduct would cause plaintiff serious emotional distress, that the defendant's conduct was the proximate cause of plaintiff's emotional injury, and that the plaintiff's emotional injury was both severe and debilitating. See *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666; *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759.

In its judgment denying appellant's motion for JNOV, the issue of timeliness of any objection to the interrogatory was not discussed. Instead, the trial court found that there was sufficient, competent evidence which, if believed by the jury, supported a verdict in favor of appellee. We would agree with this general assessment.

However, in this judgment, the trial judge also attempted to harmonize the response to Interrogatory No. 3 with the general verdict.

---

2. As discussed in *Greynolds,* "in *O'Connell* [*v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 229, 569 N.E.2d 889, 892], the Ohio Supreme Court implicitly adopted the waiver rule established by this court in *Haehnlein* * * *." *Id.* at 396, 632 N.E.2d at 951. In *O'Connell,* the court went to unprecedented lengths to reach the merits by finding plain error in order to avoid the *Haehnlein* rule. Such a plain error analysis is not merited here.

"If it is reasonably possible to do so, special findings of a jury must be harmonized with its general verdict:

" 'If such ambiguous questions are submitted * * * they should be construed as the jury understood them. Otherwise their answer is not given the effect that the jury intends. By what means shall we ascertain the understanding of the jury? The party who propounds such questions—in this case, the defendant—is responsible for their ambiguous character, and all serious doubts should be resolved against him. Under such circumstances it should be presumed that the jury placed that construction upon the question which makes their answer thereto harmonious with their general verdict and with their answers to the other special questions. * * * ' *Klever v. Reid Bros. Express, Inc.* (1949), 151 Ohio St. 467, 474, 39 O.O. 280, 283, 86 N.E.2d 608, 611–612." *Midwest Specialties, supra,* 42 Ohio App.3d at 10, 536 N.E.2d at 415.

We do not disagree with the above well-established principle of law, but we are less than convinced that this attempt at harmonization was successful. We still find ourselves troubled and concerned that *if* the jury's verdict was based entirely on the two factors enumerated, the finding would seriously undermine the well-established principle in Ohio that in an employment-at-will situation, the employer has an unqualified right to discharge an employee at any time and for any reason. See *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150.

Even though this is now a moot point, we feel compelled to point out that the jury's response arguably supports the appellant's contention that the jury might have improperly focused on the reason for and the event of the discharge itself rather than the circumstances under which the discharge was effected.

Our measuring stick as to what actions would be sufficient to constitute the intentional infliction of emotional distress in the workplace is inferred from a recent Supreme Court of Ohio decision which held that "an action predicated upon intentional infliction of emotional distress brought by an at-will employee against his employer is not foreclosed merely because his discharge from employment was obtained in a lawful manner." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083.

In *Russ,* the plaintiff-employee had questioned his supervisors at TRW regarding his division's pricing practices in relation to government contracts. He claimed that he was led to believe that his superiors clearly knew and approved of the activity, that TRW treated the activity as a common business practice, and that the activity was internally engaged in at TRW in an open and notorious manner during the years of his employment.

Ultimately he was questioned as a part of an internal audit of these pricing practices. He cooperated fully. As a result, he was discharged, he was ostracized by his former associates by direct order of a superior, and he was informed by his former employer that his name was being forwarded to the federal government for possible criminal investigation and indictment as an instigator and conspirator.

Subsequently, he cooperated with the federal government's investigation of TRW, and, in return, was granted immunity from prosecution. As a result of the circumstances surrounding his discharge, he suffered documented emotional distress.

The court in *Russ* initially noted that the independent tort of intentional infliction of emotional distress was not dependent upon the existence of a contractual relationship between the litigants. *Id.*, 59 Ohio St.3d at 47, 570 N.E.2d at 1082. The court concluded:

"A review of the evidence clearly supports the jury determination that appellant had pursued a course of extreme and outrageous conduct in its relations with appellee which produced in him severe emotional distress. The pattern of behavior employed by appellant in misleading appellee into believing the pricing practices were legitimate, discharging appellee under circumstances designed to give the impression that he was responsible for the practices, and the subsequent targeting of appellee as a suspect in the federal investigation is completely substantiated by the record." *Id.*

The court rejected TRW's argument that recognition of Russ's intentional infliction claim in an employment-at-will context was tantamount to recognizing a claim for wrongful discharge.

First, the court noted that wrongful discharge is a contractual or quasi-contractual action, whereas intentional infliction of emotional distress is an action to redress tortious conduct.

Second, the court concluded that the proximate cause of Russ's emotional distress was not the mere fact of his discharge. Rather, his psychological injuries were primarily focused on the circumstances surrounding his discharge. There was significant evidence that it was these surrounding circumstances that were the basis for the emotional trauma that he subsequently experienced.

The jury in *Russ* clearly understood that its focus was not to be on the termination itself, but rather the circumstances of the entire episode.

They, in fact, answered "No" to Interrogatory No. 6A, which asked,

"Did plaintiff prove by a preponderance of the evidence that TRW's conduct *in terminating plaintiff* was so outrageous in character, and so extreme in degree,

as to go beyond all bonds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community? [Emphasis added.]" *Id.* at 46, 570 N.E.2d at 1081.

At the same time, they answered "Yes" to Interrogatory No. 5, which asked,

"Did Plaintiff prove by a preponderance of the evidence that TRW, by extreme and outrageous conduct, intentionally or *recklessly* caused Plaintiff to suffer severe emotional distress[?] (Emphasis *sic.*)" *Id.*

Thus, it is clear that in *Russ,* the jury was not confused as to the issue before them—was there intentional infliction of emotional distress, separate and apart from the issue of termination?

From *Russ,* we conclude that even if the plaintiff-employee had *not* been fired, he still would have had cause to sue for the intentional infliction of emotional distress. Although the *Russ* court did not state that conclusion directly, we see no other logical way to separate the fact of or reason for discharge from the circumstance of discharge.

■ Therefore, if we apply that analysis to the instant case, we could arguably conclude that there was only one example of appellant's behavior which, if credited, might rise to the standard which we believe has been set out by *Russ.* That incident would be the time that appellee claimed that he was told that if he did not agree to accept the trip assignment that would put him over the seventy hours, the employer would find a driver who would, and he would no longer be needed.

Per *Russ,* this incident conceivably could rise to the level of outrageous conduct set out in *Russ,* and it was not dependent on the discharge for its outrageousness. Thus, it would have survived as a cause of action even if there had never been a discharge.

Had the jury cited this instance as well in their response to Interrogatory No. 3, we would have no qualms about accepting the trial judge's analysis that the response was harmonious with and sufficient to support the general verdict.

Nevertheless, whatever prejudice due to any insufficiency we might have found to answer number three was waived as previously discussed. The general verdict prevails if there was sufficient evidence of record to support the general verdict.

In the instant matter, we conclude, therefore, that there was sufficient evidence introduced at trial which could be construed to permit reasonable minds to differ as to whether appellee had proven all of the elements of this tort by a preponderance of the evidence.

We therefore determine that the trial judge did not err in denying appellant's motion for JNOV, even though we are not required to determine if his specific

finding that the conduct listed by the jury in Interrogatory No. 3 was sufficient to support the general verdict.

For the foregoing reasons, appellant's first assignment of error is without merit.

Appellant in its second assignment of error contends alternatively that the trial court erred in denying its motion for a new trial on the basis that the jury's verdict was unsupported by the evidence.

We note that the basis for appellant's motion for a new trial was threefold: alleged juror misconduct, improper argument by appellee in support of punitive damages, and improper limitation on appellant's closing argument. Appellant did not raise the issue of manifest weight of evidence before the trial court, but does so now for the first time on appeal.

The granting of a new trial pursuant to Civ.R. 59(A) as an alternative to entering a JNOV is within the sound discretion of the trial court. *Highfield v. Liberty Christian Academy* (1987), 34 Ohio App.3d 311, 518 N.E.2d 592. In dealing with a claim that a jury verdict is contrary to the weight of the evidence, a reviewing court can reverse only if the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result completely at odds with substantial justice. *Hardiman v. Zep Mfg. Co.* (1984), 14 Ohio App.3d 222, 14 OBR 250, 470 N.E.2d 941.

As we determined under appellant's first assignment of error, appellee presented some credible evidence which could have supported a jury's verdict. While the evidence offered at trial was often conflicting, it is not this court's role to determine the credibility of a witness's testimony. If believed, the testimony and other evidence offered in support of appellee's intentional infliction claim, as well as the reasonable inferences to be drawn from the evidence, support the jury's verdict.

For the foregoing reasons, appellant's second assignment of error is without merit.

Appellant's third assignment challenges the trial court's award of punitive damages, and its argument is predicated solely upon this court's sustaining its first assignment of error.

Appellant raises no new argument in support of this assigned error, and in light of our disposition of the first assignment of error, appellant's third assignment of error is without merit. See App.R. 12(A)(2).

On cross-appeal, appellee first argues that the trial court erred in granting appellant's motion for summary judgment on the wrongful discharge claim. Specifically, appellee contends that the recent decision of *Painter v.*

*Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, has served to expand the public policy exception to the employment-at-will doctrine and, therefore, the trial court should have permitted this cause of action to proceed to trial. Appellee maintains that he has a private cause of action for wrongful discharge because appellant terminated his employment in contravention of the clear public policy embodied in the D.O.T. logging hours regulations as incorporated in Ohio Adm.Code 4901:2–5–02(A).

Traditionally, the employment-at-will doctrine precluded a wrongful discharge action by an at-will employee. However, in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, the Supreme Court of Ohio recognized an exception to the traditional rule, holding that a discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a sufficiently clear public policy as embodied in a *statute.*

In granting appellant's motion for partial summary judgment on this claim, the trial court concluded that it was constrained by the holding in *Greeley* that the public policy must be expressly set forth in a *statute.* Because appellee alleged that the public policy allegedly violated by his discharge was embodied in an administrative regulation, the court refused to create an additional exception to the employment-at-will doctrine.

In the pertinent section of *Painter,* the court held:

"[A]n exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a 'sufficiently clear public policy.' The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, *administrative rules and regulations,* and the common law." (Emphasis added.) *Painter,* 70 Ohio St.3d at 384, 639 N.E.2d at 56.

Appellee, therefore, maintains that in light of the *Painter* court's expansion of the scope of the public policy exception, the trial court's granting of appellant's summary judgment motion was error. We disagree.

In *Greeley,* the General Assembly had adopted a statute, R.C. 3113.213(D), which specifically *forbids* an employer to discharge an employee on the basis that the employer was required to withhold amounts representing court-ordered child support payments from the employee's wages.

*"No employer may use an order to withhold personal earnings * * * as a basis for a discharge of,* or for any disciplinary action against, *an employee,* or as a basis for a refusal to employ a person. *The court may fine an employer who so discharges* or takes disciplinary action against *an employee,* or refuses to employ

a person, *not more than five hundred dollars.*" (Emphasis *sic.*) *Greeley,* 49 Ohio St.3d at 230, 551 N.E.2d at 982, quoting R.C. 3113.213(D).

The employee alleged that his discharge was due to his employer's having been made subject to the trial court's wage withholding order. The *Greeley* court concluded that the employee's discharge was for a reason *prohibited* by statute, and in such a case, a civil cause of action will lie for such an *unlawful* discharge. *Greeley,* 49 Ohio St.3d at 234, 551 N.E.2d at 986.

■ In the instant case, the regulations prohibit appellant from permitting or requiring appellee to exceed the seventy-hour on-duty limit for any eight-day period. The regulations do *not* prohibit an employer from discharging an employee who has been permitted or required to exceed this limit. Further, the regulations do not even prohibit the discharge of an employee who *refuses* to violate the hourly limit. As previously mentioned, although *Greeley* was modified and expanded in *Painter* to include administrative enactments as well as statutes, the line of demarcation is still the existence of a "sufficiently clear public policy."

On this point, further guidance is found in *Painter* where the court states:

"In making such determinations, courts should be mindful of our admonition in *Greeley* that an exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." *Painter,* 70 Ohio St.3d at 384, 639 N.E.2d at 56.

We conclude that the regulations in question do not rise to the level envisioned by the Supreme Court of Ohio in *Painter.* Specifically, they do not embody a "sufficiently clear public policy" prohibiting the discharge of an employee who alleges that his employer permitted or required him to exceed the seventy-hour limit.

Accordingly, appellee's first cross-assignment of error is without merit.

■ Under appellee's second cross-assignment of error, he argues that the trial court erred in denying his motion to confirm the jury verdict establishing the amount of punitive damages at $200,000, and instead reducing the award to $50,000. Specifically, he maintains that R.C. 2315.21(C)(2) is unconstitutional and, therefore, the trial court was required to accept the jury's punitive damages award in the amount of $200,000.

A review of the record discloses that at the time of trial, the trial court was of the opinion that R.C. 2315.21(C)(2), which places the authority for determining the amount of punitive damages with the court once the trier of fact determines that a defendant is liable for punitive damages, was unconstitutional.

Accordingly, the court submitted this issue to the jury for determination. However, in ruling on appellee's posttrial motion to confirm the punitive damages award, the trial court, relying on *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737, concluded that the statute was not an unconstitutional infringement upon appellee's right to a jury trial and, accordingly, the court independently reduced the punitive damages award to $50,000.

Recently, the Supreme Court of Ohio held that R.C. 2315.21(C)(2) is an unconstitutional violation of the right to trial by jury under Section 5, Article I of the Ohio Constitution. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397.

In light of this holding, we conclude that the trial court's initial opinion was correct. Because the trial court submitted this issue to the jury for determination, we hereby reinstate the jury's punitive damages award of $200,000.

Appellee's second cross-assignment of error is with merit.

▮ Under appellee's final cross-assignment of error he contends that the trial court erred in refusing to grant an award of prejudgment interest. Appellee argues that appellant steadfastly refused to enter into settlement discussions prior to trial on the basis of personal malice towards appellee's counsel and, therefore, prejudgment interest should have been awarded.

R.C. 1343.03(C) provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

In its judgment entry denying appellee's motion for prejudgment interest, the trial court relied on *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, wherein the court held:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Id.* at syllabus.

The trial court considered these factors in denying appellee's motion. Specifically, the court found that appellant cooperated with the extensive discovery involved in the proceedings and did not attempt to delay the proceedings in any substantial respect. The court concluded that appellant rationally evaluated its risks and liabilities.

As to the fourth factor listed in the *Kalain* syllabus, the trial court acknowledged that appellant did not respond to appellee's two settlement offers made prior to trial. However, the court went on to consider the fact that as to appellee's wrongful discharge claim, appellant prevailed on summary judgment.

Further, as to the claim for intentional infliction of emotional distress, the court noted that *Russ* was a relatively recent decision and little precedent existed to guide the litigants. The court also considered the fact that *outrageous conduct* is a difficult standard to meet, and that many of the factual issues raised by the complaint were in substantial conflict. Finally, the court noted that the issue of damages in this case dealt with pain and suffering and the nature and extent of appellee's emotional injuries—issues which are difficult to measure by an objective standard.

Accordingly, the court concluded that appellant had an objectively reasonable belief before trial that they had no liability under the facts of this case, despite the jury's contrary verdict at trial.

A trial court's denial of prejudgment interest will not be reversed absent an abuse of discretion. *Biggins v. Garvey* (1993), 90 Ohio App.3d 584, 630 N.E.2d 44; *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App.3d 28, 534 N.E.2d 855. Appellee has failed to demonstrate that the trial court abused its discretion in denying his motion for prejudgment interest.

Appellant's third cross-assignment of error is without merit.

The judgment of the trial court is affirmed as to the appeal and affirmed in part and reversed in part as to the cross-appeal.

*Judgment affirmed in part*
*and reversed in part.*

JOSEPH E. MAHONEY and NADER, JJ., concur.