OPINION *Page 2 
{¶ 1} Defendants-appellants Creekside Crossing Home Sales, et al. appeal the December 20, 2007 Judgment Entry entered by the Coshocton County Court of Common Pleas, which entered judgment in favor of plaintiffs-appellees Brent and Cindy Winegar, and judgment in favor of third-party defendant-appellee New Tech Builders, Inc. ("New Tech"), following a jury trial.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In July, 2003, Brent and Cindy Winegar entered into a contract with Appellants for the purchase and construction of a modular home on real property owned by the Winegars. During one of their three visits to Creekside Crossing, the Winegars met Appellant Steve Bush, the president of S.D. Bush, Inc. which owns Creekside Crossing. Bush introduced himself as the owner of Creekside Crossing. Appellants acted as the general contractor for the permanent placement and installation of the Winegars' modular home. Appellants hired New Tech as a subcontractor to install the basement/foundation of the home. Pursuant to the construction contract, Creekside Crossing was to construct the entire home, including septic, well, foundation, driveway, sidewalks and the garage. The contract price was $134,000 which included the cost of the modular home as well as the construction thereof.
 {¶ 3} After the basement floor was poured, the Winegars noticed standing water in the basement. The floor sloped away from the drain instead of towards it. As the garage was being constructed, the foundation wall broke and began to pull apart and fall away from the walls. Appellants' workers attempted to fix the walls by pushing large *Page 3 
amounts of dirt against the walls to avoid further movement. The Winegars also expressed concerns to Bush about the length of time it was taking to complete the job as well as concerns about the workmanship and materials on the project.
 {¶ 4} After the Winegars moved into the home in April, 2004, they learned the home was constructed without adequate footers. Footers are the base of the whole structure, bearing the weight of the entire house. The Winegars also experienced, and continued to experience, water in the basement; cracks in the basement floor; sinking of the floors and walls; cracks in the drywall; a bow in the roof of the front porch; and movement and cracking of the garage foundation.
 {¶ 5} On June 7, 2005, the Winegars filed a Complaint against Appellants, alleging breach of contract for failure to perform in a workmanlike manner, and violations of the Ohio Consumers Sales Practices Act ("CSPA"). On September 19, 2006, Appellants filed a third-party complaint against various third-party defendants, including New Tech. The third-party complaint alleged defects in the work performed by New Tech and Appellants sought indemnification from New Tech for any and all damages "incurred as a direct and proximate result of excavation defects" by New Tech. The matter proceeded to trial on November 27, 2007, and ended on November 30, 2007. After hearing all the evidence and deliberations, the jury returned a verdict in favor of the Winegars and against Appellants, and a verdict in favor of New Tech and against Appellants.
 {¶ 6} The following evidence was adduced at trial. Charles Deffenbaugh, an excavator for over 30 years, explained the importance of footers in the construction of a house. Deffenbaugh stated the standard footer is normally eight to ten inches thick and, *Page 4 
on average, 24 inches wide. Deffenbaugh excavated around the north and east walls of the Winegars' home to inspect the footers. Deffenbaugh dug 6 feet deep around both walls, but did not find a footer under either wall. Deffenbaugh noted the basement wall was sitting on the basement floor, which was a serious problem and was not standard construction practice. He did not find any gravel along the basement wall. The area had been back-filled with sand which he explained will hold water. Deffenbaugh acknowledged it would be possible to dig down and pour a footer underneath the basement walls without lifting the entire modular home. He further acknowledged the entire house would not have to be lifted and the entire basement would not have to be reconstructed.
 {¶ 7} Harold Hitchins, Jr., the Winegars' consulting engineer, inspected the home for the first time in late summer/early fall, 2004. After his initial inspection, Hitchins had numerous concerns and identified several significant problems. Most concerning to Hitchins was the fact the house was not anchored to the foundation. Hitchins also found the deck located at the rear of the house was not properly constructed. He observed a lack of a footer under the east wall, and a footer under only half of the north wall. The footer under the north and west walls were only 3 ½ inches thick. Hitchins stated the lack of footers and lack of adequate footers resulted in numerous cracks in every wall of the house. The only walls without cracks were the walls of the master bedroom. The ceiling in the living room, hallway and kitchen also were not cracked.
 {¶ 8} On his last of about half a dozen visits to the Winegars' residence, Hitchins noticed more cracks in the floors and walls, and other cracks which did not *Page 5 
exist the time of his initial visit. Hitchins also found a noticeable difference in the shifting of the house. He opined the Winegars' home was not constructed in a workmanlike manner. The three most significant reasons for this opinion were the lack of a footer under one of the walls, the lack of a sill plate, and the lack of attachment of the house to the foundation. Hitchin testified, although lifting the house to install a new foundation was possible, he had seen other projects in which repairs were made to small sections of a footer without lifting the entire house. Hitchins stated there were two ways to repair the problem: 1) lift the house off the foundation and then construct a new foundation; or 2) re-build the entire house. Hitchins discussed the problems associated with lifting a house and putting in new footers.
 {¶ 9} Carl Cognion, a contractor with over 50 years experience, estimated the repair work necessary to raise the house, remove the current foundation, and install the new foundation would exceed the cost of building a new home. He also opined the home was not constructed in a workmanlike manner. On cross-examination, Cognion stated he had no reason to believe or not believe it would not be possible to excavate around the exterior walls of the home and pour a footer without having to lift the house.
 {¶ 10} Stan Koehlinger, a structural engineer, testified on behalf of Appellants. Koehlinger inspected the Winegars' home on January 9, 2007. Koehlinger testified building the house with the basement wall sitting directly on the basement floor could be an acceptable form of construction known as "floating slab construction". Koehlinger explained when floating slab construction is utilized, the load of the walls is carried by the slab underneath it and spreads out to the thickness of the slab. The load then transfers down to the soil which carries the weight of the house. Koehlinger noted the *Page 6 
front part and north side of the Winegars' residence is on a slab. Koehlinger testified it would not be necessary to lift the entire house to install footers, nor would it be necessary to completely rebuild the house. He estimated the maximum cost to repair all of the problems would be $15,000. On cross-examination, Koehlinger conceded most of the complaints the Winegars made regarding the workmanship were valid.
 {¶ 11} Richard Kraly, an architect, inspected the Winegars' residence on behalf of New Tech. Kraly discussed each of the Winegars' complaints and the costs of the repairs. Kraly testified he saw no evidence of failure in the foundation system. He opined the foundation was installed properly and was structurally sound even though it deviated from the standards. Kraly observed no significant cracking in the Winegars home and only some minor cracks in the drywall, which he explained were due to the normal shrinkage of wood. Krally explained if there was a problem with the foundation, he would have observed more than surface cracks in the walls. Kraly also found no reason to lift the house, remove the existing foundation, and rebuild the foundation.
 {¶ 12} An additional problem which was addressed by the witnesses at trial was the improper placement of a perimeter drain near the east wall of the house which was causing water to enter the basement. The evidence showed due to a large chunk of concrete along the east wall the drain could not be placed properly near the basement floor and instead was installed 1 ½ feet above the basement floor. All of the experts agreed the improper placement of the perimeter drain could cause water and filtration, and further problems for the basement floor. New Tech was not responsible for the placement of the perimeter drain. However, the Winegars signed an agreement with *Page 7 
New Tech subsequent to the purchase agreement relative to correcting the water problem in the basement.
 {¶ 13} Appellants raise as error:
 {¶ 14} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO DISMISS S.D. BUSH DBA CREEKSIDE CROSSING HOME SALES AS A PARTY.
 {¶ 15} "II. THE JURY VERDICT IN FAVOR OF THIRD-PARTY PLAINTIFF/APPELLEE NEW TECH BUILDERS, INC., AND AGAINST THE DEFENDANT/APPELLANTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} "III. THE JURY VERDICT IN FAVOR OF THE PLAINTIFF/APPELLEES AND AGAINST THE DEFENDANTS/APPELLANTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 17} "IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO COMPLY WITH CIV.R. 49 REGARDING SPECIFIC INCONSISTENCIES BETWEEN THE JURY VERDICT AND ANSWERS TO THE JURY INTERROGATORIES."
 I {¶ 18} In its first assignment of error, Appellants maintain the trial court erred by failing to dismiss S.D. Bush dba Creekside Crossing Homes and Sales as a party.
 {¶ 19} Generally, a corporate officer will not be held individually liable on any contracts, either written or oral, which are entered into on behalf of the corporation. O'Neill v. United States (D.C.Ohio 1968),281 F.Supp. 359; Centennial Ins. Co. of New York v. Vic Tanny Internatl.of Toledo, Inc. (1975), 46 Ohio App.2d 137. Two limited exceptions, however, remove a corporate officer from the protection of the corporate *Page 8 
fiction and will allow a finding of individual liability: 1) piercing the "corporate veil," Bucyrus-Erie Co. v. Gen. Prod. (C.A.6, 1981), 643 F.2d 413; and 2) the failure of a corporate officer to identify the corporate capacity in which he is dealing with regard to a specific business transaction, Spicer v. James (1985), 21 Ohio App.3d 222;Boutell v. Patriarch Computers and Copiers (Dec. 2, 1993), Cuyahoga App. No. 64149, unreported.
 {¶ 20} The Winegars submit the trial court's decision to find Bush personally liable was appropriate because Bush failed to identify the corporate capacity in which he was acting with regard to the specific business transaction. The Winegars note a corporate officer has a responsibility to clearly identify the capacity in which he is dealing in a specific transaction.
 {¶ 21} Plaintiffs Exhibit 14 is a copy of the two-page Purchase Order executed by the Winegars and Appellants. The bottom portion of each page reads:
 {¶ 22} "THIS AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN DEALER AND BUYER AND NO OTHER REPRESENTATION OR INDUCEMENT, VERBALOR WRITTEN, HAS BEEN MADE WHICH IS NOT CONTAINED IN THIS CONTRACT.
 {¶ 23} "BUYER(S) ACKNOWLEDGE RECEIPT OF A COPY OF THIS ORDER AND BUYER(S) HAVE READ AND UNDERSTAND THE BACK OF THIS AGREEMENT."
 {¶ 24} S.D Bush signed for "CREEKSIDE CROSSING HOME SALES", which is designated as "DEALER". Immediately above S.D. Bush's signature, the Purchase Order provides: "Not Valid Unless Signed and Accepted by an Officer of the Company *Page 9 
or an Authorized Agent." The document is signed by both Brent Winegar and Cindy Winegar. "One of the most celebrated tenets of the law of contracts is that a document should be read before being signed, and the corollary to this rule is that a party to the contract is presumed to have read what he signed and cannot defeat the contract by claiming he did not read it." Haller v. Borror Corp. (1990), 50 Ohio St.3d 10,552 N.E.2d 207. It is presumed the Winegars read and understood the Purchase Order, and it also presumed they understood Bush was either an officer or authorized agent of Creekside Crossing Home Sales. Bush was not required to orally advise the Winegars of the capacity in which he was acting. Accordingly, we find the trial court erred in failing to dismiss Bush from the action.
 {¶ 25} Appellants' first assignment of error is sustained.
 IV {¶ 26} For ease of discussion, we shall address Appellants' fourth assignment of error next. In the fourth assignment of error, Appellants maintain the trial court committed plain error in failing to comply with Civ. R. 49 regarding specific inconsistencies between the jury's verdict and the answers to the jury interrogatories.
 {¶ 27} The underlying purpose of jury interrogatories is to "test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." Cincinnati RiverfrontColiseum, Inc. v. McNulty Co. (1986), 28 Ohio St.3d 333, 337. Civ. R. 49(B) provides, in relevant part: "When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers [to written interrogatories] shall be entered pursuant to Rule 58. When one or more of the answers *Page 10 
is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."
 {¶ 28} An objection to inconsistent answers to jury interrogatories is waived unless the objection is raised prior to the jury's discharge.Cooper v. Metal Sales Mfg. Corp. (1995), 104 Ohio App.3d 34, 42,660 N.E.2d 1245. See, also, Napierala v. Szczublewski, 6th Dist. No. L-02-1025, 2002-Ohio-7109, at ¶ 17. This not only promotes the efficiency of trials, by permitting an opportunity for the inconsistencies to be reconciled without the need for another trial before a new trier of fact, but also prevents jury shopping by those who wait to object to an alleged inconsistency until after the jury is discharged. Greynolds v. Kurman (1993), 91 Ohio App.3d 389, 395,632 N.E.2d 946; Napierala at ¶ 17. See, Avondet v. Blankstein (1997),118 Ohio App.3d 357, 369, 692 N.E.2d 1063; Romp v. Haig (1995),110 Ohio App.3d 643, 647, 675 N.E.2d 10. If an objection is timely made, "then the trial judge has an opportunity to correct such inconsistency by: `1. returning the jury for further consideration of its answer; 2. entering judgment in accordance with the answer; or 3. ordering a new trial'."Cooper, 104 Ohio App.3d at 42, 660 N.E.2d 1245, quoting Haehnlein v.Henry (1987), 41 Ohio App.3d 233, 535 N.E.2d 343, paragraph one of the syllabus. See, also, Civ. R. 49(B).
 {¶ 29} The remedies provided to a trial judge cannot be exercised in total once the jury has been discharged. Shoemaker v. Crawford (1991),78 Ohio App.3d 53, 61, 603 N.E.2d 1114. "Therefore, any objections to interrogatories must be raised while the *Page 11 
jury is still impaneled and the court has the full range of choices before it." Id., citing Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 436 N.E.2d 1001.
 {¶ 30} When the jury herein initially returned their verdict, the trial court noticed inconsistencies and addressed such with the jury foreperson. The trial court asked the foreperson if it was the jury's intent to find Appellants did not prove by a preponderance of the evidence New Tech failed to perform its work in a workmanlike manner, to which the foreperson answered, "Yes". The trial court proceeded in the same way concerning interrogatories nos. 17-19, and asked the foreperson, "Was it the opinion of the jury that Creekside failed to prove by a preponderance of the evidence that New Tech was negligent in any manner?" The foreperson again answered, "Yes". The trial court returned the jury for deliberations regarding inconsistencies in interrogatories nos. 8-10 and the general verdict with respect to the calculation of damages. However, the trial court did not instruct the jury to address the inconsistencies in interrogatories nos. 13-15 and 17-19.
 {¶ 31} When the jury returned for the second time, the trial court reviewed the verdict and interrogatories, but did so in silence and not on the record. The trial court did not afford counsel for either party an opportunity to review the jury's answers to the interrogatories. The trial court released the jury, and then told the attorneys they were invited to review the interrogatories answers at their convenience. At no time did Appellants object or request to review the verdicts or interrogatories prior to discharge of the jury.
 {¶ 32} Having failed to timely object or request review, Appellants have waived all but plain error. In Goldfuss v. Davidson (1997),79 Ohio St.3d 116, syllabus, the *Page 12 
Supreme Court of Ohio held: "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself ." Id.
 {¶ 33} We have reviewed all of the interrogatories at issue to determine if any inconsistencies exist, and whether those inconsistencies can be reconciled with the general verdict.
 {¶ 34} In interrogatory no. 13, the jury found Appellants did not prove by a preponderance of the evidence New Tech failed to perform their work in a workmanlike manner. In interrogatory no. 14, the jury found Appellants did not prove by a preponderance of the evidence New Tech's failure to perform in a workmanlike manner was the proximate cause of any damage to the home. However, in interrogatory no. 15, when asked, "If you find New Tech Builders, Inc., failed to perform work in a workmanlike manner, set forth such failures as you find them to be." The jury answered: "lack of possible footers", "lack of stability of deck @ w. side"; "damage to kitchen flooring and counter top due to deck on Back [sic] of house."
 {¶ 35} In interrogatory no. 17, the jury found Appellants did not prove by a preponderance of the evidence New Tech was negligent in any manner. In interrogatory no. 18, the jury found Appellants did not prove by a preponderance of the evidence New Tech's negligence was the proximate result of any damage to the home. However, in interrogatory no. 19, the jury was asked to set forth the ways New Tech *Page 13 
was negligent if they found New Tech negligent. The jury answered, "Failure to perform in a workmanlike manner."
 {¶ 36} We find the answers to interrogatories nos. 13 and 14 as well as the answers to interrogatories nos. 17 and 19, on their faces, are inconsistent. Nonetheless, we find these inconsistencies to be harmless. The jury found Appellants did not prove by a preponderance of the evidence New Tech's failure to perform in a workmanlike manner as well as New Tech's negligence were the proximate cause of any damage to the home. Even though the jury found New Tech failed to perform in a workmanlike manner and acted negligently, any error is harmless as the jury found Appellants failed to prove proximate cause; therefore, New Tech is not liable.
 {¶ 37} Appellants' fourth assignment of error is overruled.
 II {¶ 38} In the second assignment of error, Appellants challenge the jury's verdict in favor of New Tech as against the manifest weight of the evidence.
 {¶ 39} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 40} Appellants base their challenge on the inconsistencies between interrogatory no. 15, in which the jury set forth the ways New Tech failed to perform *Page 14 
work in a workmanlike manner[1], and interrogatories nos. 13 and 14, in which the jury found Appellants failed to prove by a preponderance of the evidence New Tech failed to perform their work in a workmanlike manner, and failed to prove by a preponderance of the evidence New Tech's failure to perform in a workmanlike manner was the proximate cause of any damage to the home. Appellants additionally base their challenge on the inconsistencies between interrogatory no. 19, in which the jury set forth the way New Tech was negligent[2], and interrogatories nos. 17 and 18, in which the jury found Appellants failed to prove by a preponderance of the evidence New Tech was negligent in any manner, and failed to prove by a preponderance of the evidence New Tech's negligence was the proximate cause of any damage to the home. Appellants conclude these findings by the jury are not supported by competent, credible evidence; therefore, the jury's verdict against Appellants and in favor of New Tech is against the manifest weight of the evidence.
 {¶ 41} As discussed in Assignment of Error IV, the interrogatories are, in part, inconsistent. However, the jury ultimately found Appellants did not prove by a preponderance of the evidence New Tech's actions and/or omissions were the proximate cause of the Winegars' damages. Based upon this argument, we do not find the verdict in favor of New Tech was against the manifest weight of the evidence.
 {¶ 42} Upon review of the entire transcript, we find the jury's verdict is supported by competent, credible evidence. The record shows Appellants approved and accepted *Page 15 
New Tech's work. The expert witnesses testified the role of a general contractor is to supervise the work of the subcontractors. Despite this responsibility, Bush testified he was not at the home site when the foundation was poured. Bush stated he did not realize the home was constructed without a foundation until after the commencement of the action. We find this evidence is sufficient to establish Appellants ratified New Tech's work, thereby assuming responsibility for such.
 {¶ 43} Appellants' second assignment of error is overruled.
 III {¶ 44} In the third assignment of error, Appellants challenge, as against the manifest weight of the evidence, the jury's verdict in favor of the Winegars on their claims of violations of the Ohio Consumer Sales Practices Act, and negligence
 {¶ 45} Our standard of review is set forth, supra.
 {¶ 46} The Ohio Consumer Sales Practices Act ("CSPA"), which is codified in R.C. Chapter 1345, prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions. The act is intended to be remedial and should be construed liberally in favor of consumers. Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27,29, 548 N.E.2d 933.
 {¶ 47} Whereas R.C. 1345.02 prohibits unfair or deceptive acts or practices, R.C. 1345.03 prohibits unconscionable acts or practices in connection with consumer transactions whether such acts or practices occur before, during, or after a transaction. This section lists a number of circumstances to be taken into consideration in determining whether an act or practice is unconscionable. In order to recover for unconscionable acts or practices, the consumer must prove that the supplier acted *Page 16 
unconscionably and knowingly. Karst v. Goldberg (1993),88 Ohio App.3d 413, 418, 623 N.E.2d 1348.
 {¶ 48} In order to establish a CSPA violation, the court must determine that the transaction between the parties was one to which the CSPA applied. A "consumer transaction" is defined as any "sale, lease, assignment, award by chance, or other transfer of an item of goods * * * to an individual for purposes that are primarily personal, family, or household[.]" R.C. 1345.01(A). However, this statute must be read in conjunction with R.C. 1345.02 and R.C. 1345.03, which provide that a supplier is prohibited from doing certain things "in connection with a consumer transaction." The consumer need not prove the supplier intended to commit an unfair or deceptive act to establish a violation of the CSPA, but only prove such an act was committed. Garner v. BorcherdingBuick, Inc. (1992), 84 Ohio App.3d 61, 64, 616 N.E.2d 283.
 {¶ 49} To determine if a specific act or practice is a deceptive sales practice which violates the general directive of R.C. 1345.02(A), one must look to three separate sources. First, R.C. 1345.02(B) contains an enumerated list of practices that are unfair or deceptive. Second, pursuant to R.C. 1345.05(B)(2), the attorney general is authorized to adopt substantive rules defining acts or practices that violate R.C. 1345.02. These rules are found in the Ohio Administrative Code. Third, Ohio courts have defined a variety of specific acts and practices which are unfair or deceptive. Frey v. Vin Devers, Inc. (1992),80 Ohio App.3d 1, 6, 608 N.E.2d 796. See, also, Fletcher v. Don Foss of Cleveland,Inc. (1993), 90 Ohio App.3d 82, 86, 628 N.E.2d 60.
 {¶ 50} The jury specifically found Appellants violated the Consumer Sales Practices Act by "not having detailed contract with job specifications" and "not meeting *Page 17 
customers['] expectations". Appellants submit the record is devoid of any evidence the Winegars perceived the contract to be deficient in the area of the job specifications. Appellants note the Winegars did not testify they were misled by the contract in any way. Appellants add the evidence was not sufficient to support a finding Appellants failed to meet the Winegars' expectations. Appellants refer to Bruce Winegar's testimony during which he acknowledged Appellants attempted to repair the reported problems. Mr. Winegar conceded Appellants appropriately fixed the corner of the garage. According to Appellants, the Winegars refused to allow Appellants and New Tech to remedy the water in the basement situation.
 {¶ 51} We find the record contains sufficient competent, credible evidence to establish the Winegars had been significantly misled. Mr. Winegar testified he expected footers to be installed underneath the house, however, part of the home had no foundation under it. The Winegars also stated they expected the house to be constructed properly and did not expect to have to make major repairs to a three year old home. The evidence also establishes if the house is not replaced or repaired there are significant concerns for its structural integrity. Accordingly, we find the jury's verdict with respect to the Winegars' CSPA claim was not against the manifest weight of the evidence.
 {¶ 52} Appellants further contend the evidence was insufficient to establish Appellants were negligent as the result of Bush's failure to supervise the construction project.
 {¶ 53} Virtually all of the expert witnesses acknowledged they had never seen a house constructed without footers, and had never constructed or designed a home in *Page 18 
such a manner. Further, the witnesses testified as to the role of a general contractor. Bush, himself, admitted a general contractor should know whether there was a foundation under a house. However, he had no knowledge the Winegars home lacked a foundation and failed to have any of his employees make that determination. We find sufficient competent, credible evidence to support the jury's finding of negligence.
 {¶ 54} Appellants' third assignment of error is overruled.
 {¶ 55} The judgment of the Coshocton County Court of Common Pleas is affirmed in part; and reversed in part.
 Hoffman, P.J. Wise, J. and Delaney, J., concur *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Coshocton County Court of Common Pleas is affirmed in part; and reversed in part. Costs assessed to Appellant Creekside Crossing Home Sales.
[1] The jury found New Tech's failures to be "lack of possible footers", "lack of stability of deck @ w. side"; "damage to kitchen flooring and counter top due to deck on Back [sic] of house."
[2] The jury found New Tech was negligent in that it failed to perform in a workmanlike manner. *Page 1