**Mir Masood ALI, Plaintiff,**

v.

**CHELSEA CATERING, Defendant.**

No. 1:94 CV 925.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 27, 1995.

Howard Mishler, Westlake, OH, for plaintiff.

Jeffrey J. Wedel, Squire, Sanders & Dempsey, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NUGENT, District Judge.

This matter is before this court pursuant to Defendant's Motion for Summary Judgment. (Doc. # 17). Plaintiff has filed a Brief in Opposition to Defendant's motion. (Doc. # 27). Defendant has entered a Brief in Reply to Plaintiff's Response Brief (Doc. # 32) and a Motion to Strike Ex. # 9 attached to Plaintiff's Motion (Doc. # 34). Defendant's Motion to Strike (Doc. # 34) is **DENIED** and for the reasons that follow, the Defendant's Motion for Summary Judgment (Doc. # 17) is **GRANTED** as it pertains to all causes of action raised by Plaintiff.

### I.

The present action was originally filed in the Cuyahoga County Court of Common Pleas on March 31, 1994. Thereafter, Defendant filed a Notice of Removal to the United States District Court, Northern District of Ohio on May 3, 1994. This Court has subject matter jurisdiction by reason of diversity of citizenship of the parties pursuant to 28 U.S.C. § 1441 and the federal question involved in this claim, and over the state claim based on supplemental jurisdiction. This matter was originally assigned to Judge Ann Aldrich. However, on July 10, 1995, pursuant to the protocol adopted by the judges of this Court for the creation of a docket for Judge Donald C. Nugent, this matter was transferred to the docket of Judge Donald C. Nugent.

In his complaint, Plaintiff sets forth five causes of action against Defendant, Chelsea Catering. Plaintiff's first cause of action alleges that he was wrongfully discharged by Chelsea Catering. The second cause of action alleges that Chelsea Catering engaged in prohibited handicap discrimination in violation of Ohio Revised Code §§ 4112.02 and 4112.99. The third cause of action alleges violations of ERISA pursuant to 29 U.S.C. § 1001, *et seq.* Plaintiff's fourth cause of action sounds in contract and claims detrimental reliance upon an alleged misrepresentation and/or fraud. Finally, Plaintiff's fifth cause of action is against Defendant for the alleged intentional infliction of emotional distress that was the result of his termination.

### II.

The undisputed facts of the present case are as follows:

Defendant, Chelsea Catering supplies meals, snacks and related items to Continental Airlines flights in cities including Cleveland, Ohio. Plaintiff, Mir Ali was hired by Defendant as an outside ramp coordinator in 1991. As an outside ramp coordinator, Mr. Ali's job was to act as a liaison between Defendant's inside airport operations and its delivery operations to the various airplanes. At the time of his hiring, Mr. Ali was given an employee manual entitled "Chelsea Cleveland—What You Can Expect From Us". Defendant's policy for sick leave is clearly spelled out within this manual. The manual clearly states that an employee's leave of absence "may not exceed a maximum of six months." Furthermore, the manual clearly states that although a "leave of absence protects your continuous service record and eligibility for certain benefits", "the Company cannot guarantee that [the employee's] position will be available upon returning from a leave of absence."

Plaintiff was injured in an employment related accident on Defendant's premises in early July, 1992. As a result of this accident, Plaintiff injured his knee, patella, tibia and lower back. Plaintiff remained out of work for approximately five (5) weeks. During this time Plaintiff received a leave of absence with pay and workers' compensation benefits for temporary total disability. Plaintiff returned to his full time position in early August 1992. However, in early 1993, Plaintiff's knee began to bother him and he was put on "light duty" assignments by Defendant.

On or about February 2, 1993, Plaintiff was in need of surgery on his left knee and obtained a medical leave of absence of one month for this surgery. As a result of the surgery, Plaintiff's physician, Dr. Angley, felt that Plaintiff could not immediately return to work. Pursuant to company policy, Plaintiff monthly submitted a note from Dr. Angley. In each note, Dr. Angley stated that Plaintiff needed to be off work for a few more weeks. Finally, on July 30, 1993, Plaintiff procured a return to work slip from Dr. Angley stating:

"... [Mr. Ali] is under my care for his left knee. He is able to return to work on Monday, August 2nd, 1993, but to avoid prolonged standing and walking and to use one crutch."

Plaintiff submitted Dr. Angley's note directly to Defendant and informed Defendant that he was ready and able to work.

It is at this point that the parties begin to disagree on the facts.

Pursuant to the Company's leave of absence policy, Plaintiff had six months from his initial leave in which to return from work or be subject to termination. As previously stated, Plaintiff had obtained his initial medical leave on February 2, 1993. Therefore, it was necessary for Plaintiff to return to work by August 2, 1993 in order to conform with the Company's leave policy.

Defendant contends that on August 2, 1993, Manager of Human Resources, Ms. Catherine Mitchell, informed Plaintiff that the company had no work available at that time within the limits of Dr. Angley's restrictions. However, Plaintiff contends that Ms. Mitchell and her supervisor, Mr. Weger, told Plaintiff that no position was available and that he should return to work in two (2) weeks. As a result of this, Plaintiff claims that he was not informed he was discharged until early October 1993.

On the other hand, Defendant maintains that Ms. Mitchell clearly explained to Mr. Ali that there were no positions that fit his physician's restrictions. Defendant claims that the only reason Plaintiff was terminated was because he could not safely and substantially perform his essential job duties, and no light duty work was available at the time to accommodate the Plaintiff. It is as a result of the Plaintiff's termination that the Plaintiff filed the present action.

III.

In determining whether summary judgment is to be granted, the court must consider only that evidence which is properly before it. Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)).

▮ The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985). Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted).

▮ Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

▮ The district judge, in considering this type of motion, is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

▮ In sum, proper summary judgment analysis entails:

> ". . . the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### IV.

#### A.

As a preliminary matter, this Court must address Plaintiff's argument in his Brief in Opposition to Defendant's Motion for Summary Judgment alleging that Defendant discriminated against Plaintiff in violation of the Americans with Disabilities Act (hereinafter "ADA"). Nowhere within the Complaint is a cause of action defined pursuant to the ADA, nor has Plaintiff moved this Court to amend his complaint to include such a cause of action. Rather, Plaintiff's claim is based solely on purported violations of Ohio state discriminatory laws. As such, this Court will not entertain any argument from Plaintiff in regards to purported violations of the ADA.

## B.

The pleading of the first cause of action has caused confusion with both the Defendant and this Court. Plaintiff's first cause of action alleges that he was "wrongfully discharged in that he was not terminated for just cause and in violation of Defendant's own policy as concerns medical leave of absence." It appears that the Plaintiff is claiming that he had some form of unwritten contract with Defendant stating that he could only be terminated for just cause. In addition, Plaintiff claims that Defendant violated this "contract" as well as its own medical leave policy by terminating the Plaintiff before his six month leave of absence had expired. Therefore, it is necessary for this Court to determine whether there existed a genuine issue of material fact in regard to the existence of an unwritten or implied contract between the parties.

Plaintiff's fourth cause of action alleges that Defendant "breached the contract with Plaintiff by terminating him prior to the expiration of six (6) months from the date of the commencement of his medical leave of absence." The cumulative effect of the first and fourth causes of action seem to show that the Plaintiff claims that he had either an express or implied contract with Defendant; and, the breach of that "contract" amounted to a violation of public policy under Ohio law.

This Court's determination of the first cause of action will encompass the very same reasoning as the fourth cause of action. Therefore, these two causes of action will be decided together.

### i.

It has long been the law of Ohio that either party to an at-will employment agreement may terminate the employment relationship for any reason, at any time. *Mers v. Dispatch Printing Co.* (1985) 19 Ohio St.3d 100, 103, 483 N.E.2d 150. Under Ohio law, all employment relationships are assumed to be at-will. *See, Gargasz v. Nordson Corp.* (1991) 68 Ohio App.3d 149, 151–152, 587 N.E.2d 475. In the present case, Plaintiff claims that an implied contract was created between himself and Chelsea Catering by claiming that the policies and procedures expressed in Chelsea's employee manual created an implied contract between the parties. Therefore, in order for the Plaintiff to survive summary judgment on the issue of an implied contract, he must present material evidence to show that the circumstances surrounding the parties transactions made it reasonably certain that an agreement was intended. *Cuyahoga County Hospitals v. Price* (1989), 64 Ohio App.3d 410, 581 N.E.2d 1125.

After a thorough review of the evidence properly presented pursuant to FED.R.CIV.P. 56, this Court finds that the Plaintiff has failed to present any evidence to create genuine issues of material fact in regard to the parties' employment relationship. Nowhere within the materials properly before this Court has Plaintiff raised any issue of material fact to warrant denial of summary judgment. Plaintiff claims that the existence and terms of the employee manual distributed by Defendant creates a genuine issue as to whether there existed an implied contract between the parties. This Court does not agree. Rather, the employee manual that Plaintiff relies upon, does not, as a matter of law constitute an employment contract, either express or implied. The clear language of the employee manual states:

> This Handbook is non-binding and is not intended to create, nor to be construed to constitute a contract between the Company and one of its employees.

> \* \* \* \* \* \*

> Employees are hired at the discretion of the Company, and just as they may voluntarily leave at any time, their employment may be terminated at any time.

In order for the Plaintiff to create a genuine issue of material fact in regard to the presence of an implied contract, the Plaintiff would have to offer some evidence to show that Defendant fraudulently induced Plaintiff to accept the job offer and handbook. *See, Wing v. Anchor Media Ltd. of Texas* (1991), 59 Ohio St.3d 108, 110, 570 N.E.2d 1095. Plaintiff has failed to offer such evidence. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Throughout his entire deposition testimony, Plaintiff does not claim that he misunder-

stood the leave policy or the terms of the at-will acknowledgment he signed for the employee handbook. Instead, the evidence clearly shows that the Plaintiff signed and acknowledged his name directly below the disclaimer cited above. In short, Plaintiff has failed to present any issue of material fact to show that the employment relationship he shared with Defendant was not an at-will relationship. Plaintiff has presented no evidence to show that there was an express or implied contract between him and the Defendant to vary the employment at-will relationship. As a matter of law, this Court finds that Plaintiff was an at-will employee who could be terminated for any reason other than in violation of public policy. *Mers,* 19 Ohio St.3d at 103, 483 N.E.2d 150.

In *Mers,* the Ohio Supreme Court recognized a few exceptions to the employment at-will doctrine. These exceptions include promissory estoppel, breach of an implied or express contract, and wrongful discharge in violation of public policy *as articulated in an Ohio statute. See, Greeley v. Miami Valley Maintenance Contractors, Inc.,* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981 (emphasis added). Plaintiff attempts to set forth a wrongful discharge in violation of public policy by relying upon *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, which states, in pertinent part, as follows:

> To state a claim of wrongful discharge in violation of public policy, a Plaintiff must allege facts demonstrating that the employer's act of discharging him contravene a clear, public policy.

The violation of public policy that Plaintiff alleges is that in "reliance upon the representations of Defendant's employees at the time of procuring his medical leave of absence . . . Plaintiff believed he would have a job to return to [sic]." In lieu of this Court's determination of the contractual relationship of the parties, this Court finds that there exists no genuine issue of material fact to show that Plaintiff was ever told by Defendant, or Defendant's agents, that his employment could not be terminated except for just cause. Rather, the relationship between the parties never differed from that of an at-will employment relationship. Plaintiff has offered no evidence to show a material issue of fact exists as to whether the Defendants committed such fraud in the inducement. *Wing,* 59 Ohio St.3d at 110, 570 N.E.2d 1095.

Even assuming arguendo, that Plaintiff was induced to rely upon some (unproven) fraud, Plaintiff has failed to produce a scintilla of evidence, by way of affidavit, deposition, or otherwise, to show that Defendant did *not* do all things feasible to accommodate him short of guaranteeing return to employment. On the contrary, Defendant has presented the affidavit of Ms. Catherine Mitchell, expressly stating that the Defendant did not have any "light duty positions available" when Plaintiff returned from his medical leave of absence. Ms. Mitchell also avers that the Defendant "had a surplus of employees in all job categories and was considering downsizing its operations."

Plaintiff further tries to muddle its cause of action by claiming that the six month medical leave policy of Defendant also created an implied contract. The Court finds this issue nothing more than a red herring. The evidence presented by the Plaintiff shows that he attempted to comply with the six month leave policy by returning to work on August 2, 1993 with a note from Dr. Angley dated July 30, 1993. However, at that time Plaintiff's physician placed serious physical limitations on Plaintiff's work ability. Faced with this knowledge, and after carefully considering the Plaintiff's medical restrictions, the Defendant found that it did not have any "light duty" work that was feasible under Plaintiff's restriction. Moreover, Defendant found, and Plaintiff admitted during deposition, that he could not safely and substantially perform the essential functions of his job. Only after this determination did the Defendant discharge Plaintiff. This discharge fully complied with both Plaintiff's at-will status, as well as the employee manual's statement that a leave of absence "may not exceed a maximum of six months."

Therefore, summary judgment in favor of Defendant on Plaintiff's first and fourth causes of action is appropriate.

### ii.

In his second cause of action, Plaintiff alleges that he was "handicapped" as defined by Ohio law. As such, Plaintiff claims that his termination violated Ohio Revised Code §§ 4112.02(A) and 4112.99 prohibitions against handicap discrimination.

O.R.C. § 4112 provides, in pertinent part, as follows:

It shall be an unlawful discriminatory practice:

(A) For any employer ... because of the ... handicap ... of any person, to discharge without just cause, to refuse to hire, otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

 In order to prove a *prima facie* case of handicap discrimination, a Plaintiff must show "not only that the complainant was handicapped and that the action was taken by the employer, at least in part, because the complainant was handicapped, but, further, that the complainant, though handicapped, can safely and substantially perform the essential functions of the job in question." *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 496 N.E.2d 478. The uncontroverted facts of this case show that upon Plaintiff's return to work his doctor put several physical limitations upon the type of work which Plaintiff could perform (i.e., "... avoid prolonged standing and walking and to use one crutch."). Therefore, by Plaintiff's own doctor's report, he was not able to "safely and substantially perform the duties" of his previous work.

Defendant argues that pursuant to the definition contained within O.R.C. § 4112.02(A)(3), Plaintiff does not even qualify as a "handicapped" person. However, this question is not pertinent for deciding the suitability of summary judgment upon Plaintiff's second cause of action. Regardless of whether Plaintiff was, or was not, handicapped, Defendant could only be held liable for "handicap discrimination" pursuant to O.R.C. 4112 if the Plaintiff was capable of performing the essential functions of the job

in question. *Hazlett*, at 281, 496 N.E.2d 478. On this point, Defendant has presented the affidavit of Ms. Mitchell and the "return to work" note from Plaintiff's doctor stating the physical restrictions that Plaintiff was under upon his return to work. Construing all of the evidence in a light most favorable to the Plaintiff, this Court finds that the Plaintiff has failed to prove the initial burden of a prima facie case of handicap discrimination.

 The evidence properly before this Court shows that the Plaintiff was unable to perform the essential requirements of his position as an outside ramp coordinator. "[T]he public policy of Ohio proscribing discrimination against persons with physical handicaps does not extend so far as to require an employer to continue the employment of a disabled employee who is unable to perform his job duties as a result of a work-related injury." *Barker v. Dayton Walther Corp.* (1989), 56 Ohio App.3d. 1, 564 N.E.2d 738.

Therefore, summary judgment in favor of Defendant on Plaintiff's second cause of action is appropriate.

### iii.

 In his third cause of action, Plaintiff alleges that Defendant's "termination of health coverage on or about July 30, 1993, before the six months termination of the medical leave" is in violation of ERISA, 29 U.S.C. § 1001, *et seq.* The Court finds that Plaintiff has presented no evidence to establish this cause of action.

Section 510 of ERISA provides, in pertinent part, as follows:

It shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such a participant may become entitled under the plan.

 In order for the Plaintiff to state a viable Section 510 claim, it is necessary for Plaintiff to allege and to prove that interference with ERISA rights was a motivating factor, not merely a consequence of, the ad-

verse employment action. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In his brief, Plaintiff states that "it is [my] position that [my] termination may have resulted in an inequity which would affect [my] pension and retirement rights under ERISA." Plaintiff has failed to produce any evidence to support this conclusory assumption. The mere fact that a discharge of an employee caused the employer to save benefit costs does not establish a Section 510 violation. *Conkwright v. Westinghouse,* 933 F.2d 231, 239 (4th Cir.1991).

Moreover, Plaintiff has failed to even articulate a claim under ERISA. In his brief, Plaintiff admits that he does not claim any intentional violation of ERISA. Instead, his cause of action states that he believes there is some "possible inequity" which could be a claim under ERISA. This allegation, supported by absolutely no evidence, leaves this Court with no evidence properly presented to support this cause of action.

Therefore, summary judgment in favor of Defendant on Plaintiff's third cause of action is appropriate.

iv.

 In his fifth cause of action, Plaintiff alleges that Defendant's negligent and/or intentional acts in discharging him caused him mental and emotional distress. Plaintiff's cause of action is a derivative claim stemming from his previous causes of action. Plaintiff relies upon *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 570 N.E.2d 1076, and its progeny, for the proposition that the Defendant's actions constituted sufficient outrageous conduct to rise to the level of intentional infliction of emotional distress.[1] In *Russ,* the Ohio Supreme Court held "an action predicated upon intentional infliction of emotional distress brought by an at-will employee against his employer is not foreclosed merely because his discharge from employment was obtained in a lawful manner." Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in char-

acter, and so extreme in degree, as to go beyond all possible bounds of decency. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 375, 453 N.E.2d 666. Moreover, the Ohio Supreme Court has expressly indicated that " '[l]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities ... [and that] [t]here is no occasion for the law to intervene in every case where someone's feelings are hurt.' " *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 317 (6th Cir.1989) (quoting *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 451 N.E.2d 759).

In the present case, Plaintiff has presented no genuine issue of material facts to show that the Defendant acted in any manner which was unreasonable, outrageous, or intolerable. Nothing within the record before this Court shows any action undertaken by Defendant, or its agents, that would constitute any evidence of intentional infliction of emotional distress.

Therefore, summary judgment in favor of Defendant on Plaintiff's fifth cause of action is appropriate.

IT IS SO ORDERED.

---

1. In his brief before this Court, Plaintiff states that he has previously agreed to dismiss his claim for *negligent* infliction of emotional distress pursuant to FED.R.CIV.P. 41(A). Therefore, this Court will only address the substance of Plaintiff's claim for *intentional* infliction of emotional distress.